**UNITED STATES, Appellee,**

v.

**Private First Class Dwight R. BELL, 578–92–9237, United States Army, Appellant.**

**ACMR 8903667.**

U.S. Army Court of Military Review.

26 Feb. 1992.

For Appellant: Mr. Gregory B. English, Captain Deborah C. Olgin, JAGC, Captain Michael W. Meier, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Kenneth T. Grant, JAGC, Captain Denise J. Arn, JAGC, Captain Timothy J. Saviano, JAGC, Captain Samuel J. Smith, Jr., JAGC (on brief).

Before De GIULIO, HAESSIG and ARKOW, Appellate Military Judges.

### OPINION OF THE COURT
### ON REMAND

HAESSIG, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of two specifications of wrongful distribution of cocaine and one specification of wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (Supp. V 1987) [hereinafter UCMJ]. The convening authority approved the court-martial's sentence of a dishonorable discharge, confinement for twenty years, total forfeitures, and reduction to the grade of Private E1.

Upon initial review we affirmed the findings of guilty and reduced the confinement portion of the appellant's sentence to ten years. *United States v. Bell*, ACMR 8903667 (A.C.M.R. 18 Dec.1990) (unpub.). The United States Court of Military Appeals then set aside our decision and remanded the appellant's case to us for consideration in light of its decision in *United States v. Cooper*, 33 M.J. 356 (C.M.A.1991).

*United States v. Bell,* 34 M.J. 72 (C.M.A. 1991) (order). The issue we reconsider is whether the trial judge erred in denying the defense motion to dismiss the charges because the appellant was targeted by agents of the U.S. Army Criminal Investigation Command (CID) in violation of governing directives. We hold that the trial judge did not err and affirm.

The facts in the appellant's case closely parallel those in *Cooper.* In *Cooper,* agents of the CID used a soldier named Powell, a known cocaine addict, as a registered source. Powell identified Cooper to the CID as a person who sold drugs. Unknown to Powell's CID handlers, Cooper was enrolled in the Army's Alcohol and Drug Abuse Prevention and Control Program (ADAPCP).[1] Powell contacted Cooper and asked him if he, Cooper, knew where Powell could get drugs for a third person. Cooper "responded negatively, stating that he was not 'using' drugs and was not 'doing anything else.'" Powell, however, continued calling Cooper and Cooper eventually agreed to help Powell. On two subsequent occasions Cooper took Powell to a crack house where Cooper purchased drugs and gave them to a third person, an undercover CID agent. At his trial for two distributions of cocaine Cooper argued that he was entrapped, and that the "action taken by Powell and CID violated Army and CID regulations governing participants in the ADAPCP." Cooper's arguments were unsuccessful and he was convicted. We affirmed in an unpublished opinion. The United States Court of Military Appeals affirmed. 33 M.J. 356.

Here, the CID was interested in targeting soldiers involved with cocaine and learned of the appellant's involvement with drugs through a registered source, one Nolte. Nolte had initially met the appellant while both were in Advanced Individual Training at Fort Rucker, Alabama. Nolte had apparently been a participant in the ADAPCP and was pending an administrative separation from the Army as a result of being a drug rehabilitation failure.

He became a registered source in an attempt to obtain CID help for himself since he was in legal trouble, having just a day or so before been apprehended for possession and use of marijuana. Nolte knew that the appellant was a cocaine addict, was "strung out," and would be an easy set-up. Nolte knew the appellant was using cocaine while in the ADAPCP program because the appellant had borrowed money from him to purchase cocaine and so told the CID. He did not share knowledge of the appellant's ADAPCP participation with CID. The CID did not learn that the appellant was a participant in the ADAPCP until trial.

Immediately after being provided the appellant's name, Nolte, the registered source, and a CID agent went looking for the appellant. They quickly located him and, without any inducement, the appellant agreed to arrange an immediate purchase of cocaine for the CID agent who was posing as a friend of Nolte's. Following the appellant's directions, the group proceeded into the local civilian community where the appellant purchased cocaine for the CID agent with funds provided by the agent. Subsequently, the appellant made a second cocaine purchase for Nolte's "friend," the undercover CID agent, and used some of the drug himself. After this second incident the appellant was apprehended and ultimately tried, convicted, and sentenced by general court-martial.

At trial, the appellant moved to dismiss the charges on the ground that the CID's conduct in using Nolte as a registered source to target the appellant violated the provisions of 42 C.F.R. § 2.11 and 2.17(b), and Army Regulation 600–85, Personnel–General: Alcohol and Drug Abuse Prevention and Control Program, para. 2–16 (21 Oct.1988) [hereinafter AR 600–85]. 42 C.F.R. § 2.11 defines an informant (for the purposes of that regulation) as an individual:

(a) who is a patient or employee of a program or who becomes a patient at the

---

1. It is unclear whether Powell knew that Cooper was a participant in ADAPCP although Chief Judge Sullivan's opinion concurring in the result seems to indicate that Powell did know.

request of a law enforcement agency or official, and

(b) who at the request of a law enforcement agency or official observes one or more patients or employees of the program for the purpose of reporting the information obtained to the law enforcement agency or official.

42 C.F.R. § 2.17(b) provides:

No information obtained by an undercover agent or informant, whether or not that undercover agent or informant is placed in a program pursuant to an authorizing court order, may be used to criminally investigate or prosecute any patient.

AR 600–85, para. 2–16a provides:

It is Army policy to encourage voluntary entry into ADAPCP. Military police, Criminal Investigation Division (CID) special agents, and other investigative personnel will not solicit information from clients in the program, unless they volunteer to provide information and assistance. If the client volunteers, the information will not be obtained in the [counseling center] or in such a manner as to jeopardize the safety of sources of the information or compromise the confidentiality and credibility of the ADAPCP.

The trial judge denied the defense motion, ruling that 42 C.F.R. § 2.17 did not apply to the facts of this case, and that the cited provision of AR 600–85 did not bar prosecution of the appellant.

Writing the lead opinion for a sharply divided Court in *Cooper*, Judge Cox said, "the sole question we must decide is whether a special agent of the CID *knowingly* approached appellant and got him involved in this transaction in violation of Army regulations." 33 M.J. at 358. He found "ample evidence of record to support the factual findings of the military judge" who found "'that the CID did not know that the accused was in any sort of rehabilitation program until AFTER he had been targeted as a possible source of the distribution of drugs.'" Citing *United States v. Burris*, 21 M.J. 140 (C.M.A.1985), Judge Cox held that those findings should not be dis-

turbed on appeal. *Id.* Chief Judge Sullivan, concurring in the result reached by Judge Cox, disagreed that the case could be decided on that basis, arguing that the "Government cannot disavow its informant's knowledge," citing *Sherman v. United States*, 356 U.S. 369, 375, 78 S.Ct. 819, 822, 2 L.Ed.2d 848 (1958). 33 M.J. at 359. He also disagreed with Judge Cox's application of the Army's ADAPCP regulation, arguing that the regulation "does not apply to offenses occurring after entry into the program," that the regulation prohibits only the gathering of information regarding participants in the ADAPCP, and that the regulation does not prohibit "the conduct of a 'sting' operation." Senior Judge Everett, in a moving dissent, took the position that Judge Cox framed the issue too narrowly, and argued that except for the investigation of suspected drug activity engaged in before entry into the ADAPCP,

ADAPCP participants are to be left alone, free from any government contacts that might well frustrate the successful rehabilitation of the patient. Any action that might psychologically lure a flawed and vulnerable addict back into the environment he is trying so mightily to shun is morally reprehensible and legally proscribed.

33 M.J. at 362.

In his lead opinion in *Cooper*, Judge Cox noted that,

If we were convinced that the CID knowingly sought out a member who was in the program for the purpose of setting him up for a subsequent arrest, then clearly we would have to find that a violation of due process occurred.

33 M.J. at 358.

We believe the appellant's case can be affirmed within the analytical framework articulated by both Judge Cox and Chief Judge Sullivan. Both agree that participation in the drug rehabilitation program does not shield a soldier from prosecution for criminal drug conduct engaged in after joining the program. Both agree that if the CID knowingly sought out a program participant for the purpose of setting him up for later arrest that a due process viola-

tion would exist. They appear to differ on the nature of the knowledge, or lack thereof, held by the CID with respect to ADAPCP program participants in these two cases. We believe that in the case of a sting operation the CID would not have to turn away a soldier they recognized as an ADAPCP participant solely because of that participation.

In both *Cooper* and the case before us, the appellants and the registered sources knew each other. In both cases they knew that the respective appellants were addicts, that they were participants in ADAPCP, and that they had engaged in drug misconduct after entry into the program. Here, Nolte's actions with respect to the appellant were significantly less aggressive than those taken by the registered source in *Cooper*. There, Cooper initially responded negatively to the registered source's importunings but the registered source "kept calling." Here, Nolte made only a single, simple, and perfunctory request to the appellant whose compliance with the request was immediate and unhesitating. There was no overreaching by Nolte or the CID. The appellant was an active cocaine user while an ADAPCP participant. He was clearly readily complaisant and we so find.

The findings of guilty are affirmed. After considering the entire record, the Court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

Senior Judge De GIULIO and Judge ARKOW concur.