# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, K.M.MCDONALD, D.C.KING**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**TODD A. SMITH**
**STAFF SERGEANT (E-6), U.S. MARINE CORPS**

**NMCCA 201400400**
**Review Pursuant to Article 62(b), Uniform Code of Military Justice,**
**10 U.S.C. § 862(b) and Review of a Third Party Petition for Extraordinary**
**Relief in the Nature of a Writ of *Mandamus***

**Military Judge:** Maj C.D. Bareford, USMC.
**Convening Authority:** Commander, Marine Corps Base, Quantico, VA.
**For Appellant:** Maj Suzanne Dempsey, USMC; Capt Matthew Harris, USMC.
**For Appellee:** Maj Jason Wareham, USMC.
**For Third Party Petitioner**: Maj Marc Tilney, USMC.

**10 February 2015**

---
**OPINION OF THE COURT**
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

This case was docketed with the court on 4 November 2014 as a Government interlocutory appeal pursuant to Article 62, Uniform Code of Military Justice.[1]  The appellee is currently charged with violations of Articles 92, 93, 107, and 128, UCMJ.

---
[1] 10 U.S.C. § 862.

Following the military judge's written ruling dismissing with prejudice several of the specifications, the government filed a timely notice of appeal.  On 20 January 2015, Victim's Legal Counsel representing Corporal (Cpl) JK filed a Petition for Extraordinary Relief in the Form of a Writ of *Mandamus* with the court pursuant to the All Writs Act.[2]  The petitioner seeks a "Stay until this Court rules on this Petition and Petitioner seeks a Writ of Mandamus setting aside the Trial Court's rulings of October 14, 2014, under RCM 703, and directing the Military Judge to treat Cpl JK with fairness and respect for her dignity pursuant to 10 U.S.C. § 806(b) by providing her an opportunity to "be heard" prior to ruling on the defense motion to dismiss all charges and specifications."[3]

After carefully considering the record, the military judge's ruling, and the submissions of the parties, we find that the military judge failed to make adequate findings of fact and omitted analysis necessary to permit us to determine whether he abused his discretion.  Accordingly, we grant the Government's appeal and remand the record for action consistent with this opinion.  This resolution renders the Petition for Extraordinary Relief moot and it is therefore denied without prejudice.

## Background

The appellee was a military police patrol supervisor. Lance Corporal (LCpl) JK[4] was one of his subordinates and stood watch in the lobby of a secure law enforcement facility known as MDIA.  On 28 October 2013, the appellee stopped at the lobby while LCpl JK, Cpl Pelligrino, and Cpl Toner were on duty. While there, the appellee is alleged to have approached the front desk, picked up a bottle of hand sanitizer, pointed it at LCpl JK and squirted some of the contents onto her shoulder, stating "Oops, just splooged on you."  This allegation, in part, formed the basis for sexual harassment and maltreatment charges against the appellee.

On 11 November 2013, the appellee arrived to conduct his rounds at the MDIA lobby.  In the presence of Cpl Toner and LCpl JK, the appellee is alleged to have been unable to properly open a door and to have fallen asleep on the desk.  This conduct

---

[2] 28 U.S.C. § 1651(a).

[3] Petition for Extraordinary Relief of 20 Jan 2015 at 3.

[4] LCpl JK has since been promoted to corporal.

2

forms the basis of a dereliction of duty charge against the appellee.

Gunnery Sergeant (GySgt) Ableman conducted a command investigation into the allegations against the appellee. During his investigation, Cpl Pelligrino and LCpl JK provided information regarding the hand sanitizer and Cpl Toner provided information regarding the 11 November 2013 dereliction allegation. GySgt Ableman discovered that the MDIA lobby was under twenty-four hour video surveillance and, with the assistance of Major (Maj) Rainey, the Security Battalion Operations Officer, made arrangements to view the recordings of the lobby during the relevant time frames.

Maj Rainey contacted Ms. Stewart, the MDIA Deputy Head of Security whose duties included maintaining the building's video surveillance equipment. In an email, Maj Rainey asked Ms. Stewart "about getting the footage reviewed and put on disc."[5] On or about 20 November 2013, Ms. Stewart and two of her subordinates (Mr. Waller and Ms. Bullard) reviewed the footage from the lobby recorded on 28 October 2013 and Ms. Stewart notified Maj Rainey that "video review of 28 October is not showing that someone approaching the front desk squirted hand sanitizer on any of the officers."[6] The military judge found that Mr. Waller and Ms. Stewart "could not remember certain details about what the video showed, such as the number and gender of Marines behind the desk when the alleged incident occurred."[7]

Regarding video review of 11 November 2013, Ms. Stewart asked Maj Rainey for "further details" so that a more in-depth review could be conducted.[8] Maj Rainey never responded.[9] However, Ms. Bullard reviewed the video footage of that day and did not see the appellee have difficulty opening the door.[10] However, Ms. Bullard testified that while reviewing the video of 28 October 2013, she did observe the appellee use hand sanitizer

---

[5] AE XVII, Military Judge Finding of Fact (FoF) 9.

[6] FoF 10.

[7] FoF 15.

[8] FoF 10.

[9] FoF 11.

[10] FoF 18.

3

"on himself," testimony that was not cited by the military judge.[11]

Jurisdiction of the investigation was assumed by Criminal Investigations Division and thereafter by the Naval Criminal Investigative Service. Video footage of the relevant time frames was not preserved and was ultimately destroyed thirty days after recording. However, when interviewed by government investigators, the appellee admitted that he had "accidentally squirted" hand sanitizer on JK and said "oops, just splooged on you."[12]

On 11 April 2014, charges were preferred accusing the appellee of several violations of the UCMJ. Shortly thereafter, the defense brought a motion to dismiss all charges and specifications because the Government failed to preserve the video footage. The motion was litigated in advance of trial and on 14 October 2014 the military judge entered findings of fact and conclusions of law. Applying RULE FOR COURTS MARTIAL 703, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), the military judge determined that the destroyed video footage was relevant, necessary, and essential to a fair trial both in terms of showing the alleged events did not occur as well as utilizing the footage to impeach Cpl Pelligrino, Cpl Toner, and LCpl JK. Determining that there was no adequate substitute for the video footage, the military judge dismissed with prejudice the relevant specifications and barred the testimony of Cpl Pelligrino, Cpl Toner, and LCpl JK. After a motion for reconsideration was denied, the Government filed this timely appeal.

**Standard of Review**

This Court has jurisdiction to hear this appeal under Article 62(a)(1)(A), UCMJ, which authorizes the Government to appeal "[a]n order or ruling of the military judge which terminates the proceedings with respect to a charge or specification." On an interlocutory appeal, we are constrained to act "only with respect to matters of law." Art. 62(b), UCMJ. Unless they are clearly erroneous, we are bound by the military judge's findings of fact and lack authority to find additional facts. *United States v. Baker*, 70 M.J. 283, 287-88 (C.A.A.F. 2011).

---

[11] Record at 101.

[12] Prosecution Exhibit 3 at 3.

"When a court is limited to reviewing matters of law, the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are fairly supported by the record." *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004) (quoting *United States v. Burris*, 21 M.J. 140, 144 (C.M.A. 1985)) (internal quotation marks and additional citations omitted). If findings are incomplete or legal issues left unresolved by the military judge, the "'appropriate remedy . . . is a remand for clarification' or additional findings." *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995) (quoting *United States v. Kosek*, 41 M.J. 60, 64 (C.M.A. 1994)).

This court reviews a military judge's ruling on a motion to dismiss for an abuse of discretion. *Gore*, 60 M.J. at 187. This occurs when the military judge's "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted).

**Discussion**

The military judge relied upon R.C.M. 703(f)(2) in determining that dismissal was an appropriate remedy. R.C.M. 703(f)(1) provides that: "[e]ach party is entitled to the production of evidence which is relevant and necessary." Although R.C.M. 703(f)(2) notes that "a party is not entitled to the production of evidence which is destroyed, lost, or otherwise not subject to compulsory process," the rule also provides that:

> [I]f such evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings, unless the unavailability of the evidence is the fault of or could have been prevented by the requesting party.

5

Therefore, to be entitled to relief under R.C.M. 703(f)(2), an accused must show: (1) the evidence is relevant and necessary; (2) the evidence has been destroyed, lost, or otherwise not subject to compulsory process; (3) the evidence is of such central importance to an issue that it is essential to a fair trial; (4) there is no adequate substitute for such evidence; and (5) the accused is not at fault or could not have prevented the unavailability of the evidence. R.C.M. 703(f)(1) and (2). The Government does not challenge the military judge's findings that the evidence has been destroyed nor contend that the appellee was at fault or could have prevented the unavailability of the evidence. Therefore, we focus on the first, third, and fourth prongs of this analysis.[13]

**Relevant and Necessary**

Relevant evidence is evidence which has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence." MILITARY RULE OF EVIDENCE 401, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). Relevant evidence is necessary when it is "not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue." R.C.M. 703(f)(1), Discussion. The military judge found that the destroyed footage was relevant and necessary because:

> such footage apparently would have showed that at least some of the behavior described by government witnesses was not evident in the footage. Furthermore, it could have been important impeachment evidence for the defense, which could have used the video footage to cast doubt on these specific allegations, as well as other allegations, made by key government witnesses, including [LCpl JK, Cpl Pelligrino and Cpl Toner].[14]

We agree and hold that the military judge did not abuse his discretion in this regard.

---

[13] In light of our resolution of the appeal, it is not necessary to address whether R.C.M. 703(f)(2) imposes a stricter standard than does Article 46, UCMJ.

[14] AE XVII, Conclusion of Law 8.

**Central Importance**

Next, the military judge determined that the video footage, which apparently showed no sign of the appellee committing the misconduct of which he was accused, was of "central importance" to the appellee's ability to defend against the allegations that he squirted hand sanitizer on LCpl JK on 28 October 2013. However, as the Government correctly points out, the military judge did not address the appellee's admission that the hand sanitizer incident occurred and did not analyze whether this admission would impact the "central importance" of this evidence at trial.

An accused's "confession is like no other evidence [and] is probably the most probative and damaging evidence that can be admitted against him." *United States v. Ellis*, 57 M.J. 375, 381 (C.A.A.F. 2002) (quoting *Arizona v. Fulminante*, 499 U.S. 279 296 (1991)). We see no difference where, as here, the admission concedes the *actus reus* but not the *mens rea*. As such, an admission may very likely impact the importance of other evidence. *See generally Ellis*, 57 M.J. 375 (in case of destroyed evidence, confession went far in rendering harmless any error for failure to provide requested remedy). Having reviewed the parties' briefs, the military judge's findings, and the record of trial, we conclude that this omission substantially limits our ability to determine if the military judge abused his discretion by finding the destroyed evidence was of "central importance."

**No adequate substitute**

Finally, regarding the specification that the appellee was derelict in the performance of his duties on 11 November 2013, the military judge found that Ms. Bullard "did not see [the appellee] drop anything or have problems opening the door on November 11, 2013."[15] However, there is no finding as to how carefully she viewed the video, how certain she could be of its contents, or whether or not she had difficulty recalling what she saw. In addition, as the Government points out, the military judge failed to even consider Ms. Bullard as a substitute and he made no mention of her testimony that she saw the appellee use the hand sanitizer on himself. Without a complete recitation of the facts or the military judge's thorough analysis based thereon, we are again unable to determine if there was an abuse of discretion.

---

[15] FoF 18.

## Conclusion

The military judge entered incomplete findings which lead to inadequate analysis. First, he failed to recognize the appellee's admission and omitted any analysis of what impact that it would have on the importance of the destroyed evidence. Moreover, he overlooked findings on the totality and quality of Ms. Bullard's testimony and omitted any analysis on whether that testimony would provide an adequate substitute for the destroyed footage. The lack of these necessary findings and analysis constrains our ability to adequately determine if the military judge abused his discretion in dismissing the specifications. In light of these incomplete findings, the appropriate remedy is a remand for additional findings and analysis. *Kosek,* 41 M.J. at 64.

Accordingly, the appeal of the United States is granted. The military judge's ruling is vacated and the record of trial is returned to the Judge Advocate General for remand to the convening authority and delivery to the military judge for reconsideration in light of this opinion. The military judge may permit additional evidence and argument on the motion to dismiss and shall enter thorough findings of fact and conclusions of law to support his reconsidered ruling. The trial may then proceed or the United States may again pursue appeal under Article 62, UCMJ, if appropriate. *Kosek*, 41 M.J. at 65.

For the Court


R.H. TROIDL
Clerk of Court

8